IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ANTWION DOWDY, #556395, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:24-cv-00509 |
| | ) Judge Trauger |
| WARDEN VINCENT VANTELL, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Antwion Dowdy, a state inmate confined at the Trousdale Turner Correctional Complex (TTCC), filed a pro se civil rights Complaint under 42 U.S.C. § 1983 and paid the filing fee.

On November 14, 2024, the court conducted an initial review of the Complaint under the Prison Litigation Reform Act (PLRA). (Doc. No. 13.) The court described the allegations and claims of the Complaint as follows:

> The plaintiff alleges that on January 23, 2024, while TTCC was on institutional lockdown, Unit Manager Cockrell enlisted him to pass out lunch trays. While delivering these trays to cells DB 202 and 203, both of which had open cell doors, the plaintiff was attacked by three gang-affiliated inmates and stabbed four times. A code was called, and Chief of Security Porter responded. He ordered the gang-member inmates to drop their knives and deployed chemical spray to subdue them. The plaintiff was also sprayed and forced onto the ground. He was subsequently removed to the prison's medical unit and then rushed to an outside hospital for treatment, after which he was placed in segregated confinement for six days. During his time in segregation, he could not shower or use the phone to contact his family. (Doc. No. 1 at 4.) Based on these facts, the plaintiff claims that his Eighth Amendment rights were violated by "the combination of inadequate staffing and . . . [im]proper supervision during the institutional lockdown," which "caused prison officials not [to] be able to take reasonable measures to protect [him] from assault by other inmates." (*Id.*) He claims that Unit Manager Cockrell was the only prison official on duty in the unit when lunch trays were being distributed on January 23, and that Cockrell was busy passing out trays when the plaintiff was attacked. (*Id.*) The plaintiff sues Cockrell, Chief of Security Porter, Warden Vantell, and the private operator of TTCC, CoreCivic, Inc. (*Id.* at 1.)

(Doc. No. 13 at 2–3.) The court found that the facts as pled did not support a viable failure-to-protect claim under the Eighth Amendment, which requires a showing that prison officials were deliberately indifferent to—and not merely negligent regarding—"a substantial risk of serious harm" to the plaintiff. (*See id.* at 3–4) (stating that "[a]n unintended injury resulting from lack of due care for prison conditions does not involve the requisite level of subjective culpability to amount to cruel and unusual punishment, whereas injury resulting from deliberate indifference to inmate safety does"). The court analyzed the matter as follows:

> Here, the plaintiff does not allege that any defendant was aware that he was at particular risk of being attacked while distributing lunch trays on the January day in question. Nor does he allege that the conditions at that time at TTCC were such that all inmates were known to be at risk of such an attack. An inmate who has suffered actual harm—such as the plaintiff here clearly has, given that he suffered multiple stab wounds—may viably claim an Eighth Amendment violation based on a risk to all inmates because of violent prison conditions in general, *Wilson*, 148 F.3d at 601, **if** he can show "that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," and that the defendants had reason to know of the risk yet failed to respond reasonably to address it. *Farmer*, 511 U.S. at 842–45 (internal quotation marks omitted).
>
> The Complaint does not allege that defendants Cockrell, Porter, or Vantell were personally involved in any unreasonable response to such a known, substantial risk. Individual prison officials can only be held liable under Section 1983 if they were personally involved in a violation of federal rights; officials may not be held liable based *solely* on their responsibility to oversee or supervise prison operations or personnel. *See Griffith v. Franklin Cnty., Kentucky*, 975 F.3d 554, 579 (6th Cir. 2020) ("There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.") (citation omitted); *Herndon v. Heyns*, 702 F. App'x 325, 327 (6th Cir. 2017) (affirming judgment for warden after finding that the complaint failed to "allege any personal involvement" or "wrongdoing on [warden's] part"); *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability."). Furthermore, for a corporate defendant such as CoreCivic —which is a state actor by virtue of performing the traditional state function of operating a prison, *Street*, 102 F.3d at 814—to be liable under Section 1983, there must be a causal relationship between the execution of a corporate policy or custom and the substantial risk the plaintiff faces. *See, e.g.*, *O'Brien v. Michigan Dep't of Corr.*, 592 F. App'x 338, 341 (6th Cir. 2014) ("[A]n entity may be liable under § 1983 only if its official policies or customs resulted in injury to the plaintiff.

> O'Brien made no such allegations in his complaint, and, therefore, failed to state a claim against Corizon.") (internal citation omitted). The Complaint alleges that the cause of the plaintiff's injuries was "the combination of inadequate staffing and . . . [im]proper supervision during the institutional lockdown" on January 23, 2024. (Doc. No. 1 at 4.) It does not explicitly allege that any CoreCivic policy or custom caused TTCC to maintain inadequate levels of staffing and supervision during that day's lockdown.

(Doc. No. 13 at 4–5.)

Nevertheless, the court found it appropriate to allow the plaintiff the opportunity to amend the Complaint to avoid dismissal under the PLRA. The court gave the plaintiff 30 days to "provide additional factual support for his failure-to-protect claim against the appropriate defendants." (*Id.* at 6.) The amendment allowed was explicitly "limited to the provision of additional facts in support of the plaintiff's failure-to-protect claim." (*Id.*)

On January 2, 2025, roughly two weeks after the plaintiff's deadline expired, the court received his Amended Complaint. (Doc. No. 14.) The Amended Complaint does not address any of the deficiencies pointed out in the court's prior order. Rather, it alleges the same core of facts in support of a failure-to-protect claim while adding explicit claims for "breach of duty" and "negligence." (*Id.* at 4.) The Amended Complaint then breaks down the plaintiff's request for monetary damages, assigning certain amounts for certain harms described in blurb form; for instance, it seeks "$500,000 – physical restraint," "$500,000 – negligence days in segregation," "$100,000 – denial access to the courts/law library," "$100,000 – deprivation of food – violation of 8th Amendement," *et cetera*. (*Id.* at 5–6.) The Amended Complaint identifies "case law" corresponding with certain of its damages requests, but only by reference to the names of the parties, to wit: "Hutchison vs. Stuckey," "Straub vs. Monge," and the like. (*Id.* at 6.)

Finally, in addition to the fact that the Amended Complaint does not comply with the court's instructions to provide additional facts in support of the failure-to-protect claim, but steers

3

the case more in the direction of the claim that the defendants' negligence was to blame for the conditions which led to the plaintiff's injuries, the signature affixed to it does not appear to be that of plaintiff Dowdy (*compare* Doc. No. 1 at 6 *with* Doc. No. 14 at 12); indeed, the Amended Complaint was mailed from the address of an individual in Memphis, Tennessee (*see* Doc. No. 14 at 13), rather than from TTCC where the plaintiff is incarcerated.

For all of these reasons, the court adheres to its prior determination that the plaintiff fails to state "any plausible claim against any named defendant." (Doc. No. 13 at 5.) This case is therefore **DISMISSED**. The dismissal is without prejudice to the plaintiff's ability to pursue any negligence-based claims in state court.

The court **CERTIFIES** that any appeal from this dismissal would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge